UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JOHN MOYNIHAN  ,                                )
                                                )        Docket No.   16-CIV-_____(   )
                      Plaintiff,                )
                                                )        **NOTICE OF REMOVAL**
    -against-                                   )     **TO US DISTRICT COURT S.D.N.Y.,**
                                                )  **MUNICIPAL RECOVERY ACTION S**
                                                )   **FROM TOWN OF CORTLANDT, NY**
                                                )    **28 U.S.C. 1441(a)(b); 28 U.S.C. 1331;**
                                                )    **42 U.S.C. 1983; Civil Rights Act 1964;**
TOWN OF CORTLANDT, INC.,                         )    **NY REAL PROPERTY LAW 233**
TOWN BOARD OF CORTLANDT, NY;                     )
LINDA PUGLISI, and Personally;                   )
RICHARD BECKER and Personally;                   )
FRANCIS X. FARRELL, and Personally;              )
KEN HOCH, and Personally;                        )        $\mathcal{J}_{URY}$ $D_{E m A N D}$
CHRIS KEHOE; and Personally;                     )
JOHN E. SLOAN, and Personally;                   )
THOMAS F.WOOD, ESQ.;                             )
THOMAS F.WOOD, Personally;                       )
JEFF COLEMAN, P.E. and Personally                )
ROBERT  DYKEMAN,                                 )
                                                )
                      Defendant/Respondents,    )

-------------------------------------------------------------X

1).     Plaintiff JOHN MOYNIHAN, Defendant in a Town of Cortlandt civil case # 16100154

provides and files this Notice of Removal from the Justice Court of the Town of Cortlandt

Manor proceeding entitled (**"NOTICE OF PETITION TO RECOVER POSSESSION OF**

**REAL PROPERTY"**), under town of Cortlandt Justice Court case under of

Case No. 16100154. Plaintiffs/Tenants, shall move before the United States District Court

for the Southern District of New York at the Courthouse located at 500 Pearl Street New York

NY at a Motion Term on _____ _____, 2016, at ____:____ o'clock in the _____noon.

This removal action is commenced pursuant to 28 U. S. C. 1441(a), (b), as the defendant Town's

1

This removal action is commenced pursuant to 28 U. S. C. 1441(a), (b), as the defendant town's action is set to commence on July 18, 2016 at 12:00 in the afternoon in the Justice Court of the Town of Cortland, at One Heady Street, Cortlandt Manor, County of Westchester, state of New York 10567, and within this Courts' district boundaries. This District Court has Original, Subject matter and supplemental jurisdiction. The federal questions demonstrated by the Plaintiffs/Tenants Motion and Supporting exhibits complained of, and the unlawful conduct of events alleged are encompassed under Article III Section 2 of the US Constitution and 42 USC 1983, 18 USC 241 and 242 of unlawful conduct and conspiracy under color of law and office in an official capacity predicates and further confers exclusive federal jurisdiction. Additionally, the captioned Plaintiffs/Tenants invokes this court's supplemental jurisdiction to adjudicate all state claims arising therefrom.

2). Plaintiffs will show facts abundantly clear that the defendants participated in or became Co-conspirators' and accessories thereafter in prohibited conduct contrary to Article III Section 2 of the Constitution, engaging in prohibited conduct, under state authority, color of law and office contrary, to unlawfully deprive the Plaintiffs of rights secured under the US Constitution, the 5th and 14th amendments among others.

3). Plaintiffs will also show the defendants engaged in conduct ("Collectively") to

2

conspire to deprive the petitioners due process rights, and rights secured by the Civil Rights Act of 1964; while such conduct is demonstrated "Collectively," in the alleged conspiracy to deprive Civil Rights, and contrary to 18 USC 241 and 242, in addition to alleged Schemes to defraud the Plaintiffs of funds alleged to be in excess of $ 100,000.00 from the petitioners.

4).    Plaintiffs collectively, will present and abundantly show conclusive and irrefutable facts and evidence, aside an admission of at least one unlawful and other ongoing unlawful seizures of other captioned petitioners properties on at least 3 occasions while depriving these other Plaintiffs due process rights while violating the "takings clause" of the 5th amendment, while simultaneously engaged in other alleged criminal conduct in violation of numerous sections of US Title 18, and of the pendant state's penal code of the State of New York.

5).    The Defendants are proceeding and are to commence a land possession recovery proceeding seeking final judgment and possession by award to recover real property pursuant to NY Real Property Actions and Proceedings Law ("RPAPL") Section 747 in the Town of Cortland Justice Court, creating an appearance and actual prejudicial bias due to the town's financial interest, while overlooking the town and other respondents collectively, having engaged in established, prohibited civil and criminal conduct, and appearing so by an admission, to a NY State Trooper's investigative interview of the town's attorney, Thomas F. Wood, Esq., as set forth in the annexed State Police Report of conduct contrary to provisions of New York Real Property Law Section 235.1. These acts are actionable by the plaintiffs, being in and among the class of individuals providing legal standing in such actions pursuant to RPAPL 713(4); 721(10), and NY RPAPL 721(11), among federal standing created by the defendants unlawful conduct, under color of law, office and state authority.

3

(6).    One of such Plaintiff/Tenants captioned and herein named, is also a "Respondent/Tenant" named and captioned in the Cortlandt Town's, Justice Court action, Frank Laforgia, has previously commenced a directly related District Court Civil action prior to defendants' State action, predicating federal jurisdiction in that related civil action that is ongoing and pending in this honorable SDNY district, under the Courts' Docket No.: 7:15-cv-08589. That related case is now currently before the honorable District Court Judge, Kenneth M. Karas.

6).    The Defendant town presents a deed of which appears fictitious and of questionable Authenticity, while current County of Westchester Clerk records appear to demonstrate a break in the property chain of title among many alleged owners of which deeds are not currently available; and upon information, belief and preliminary investigation of records provided by the Westchester County Clerks' Office, appears the towns property acquisition by the alleged deed of James M. W. Martin, by appearance is fraudulent. Plaintiffs allege the specific property alleged to have been gifted by the Deed and Life Estate of James Martin, was in fact never his to gift to the Town of Cortlandt Manor and alleged to belong to his late father Frank Martin. Noteworthy is, the most recent transfer to James M.W. Martin, according to the title chain shown in the Office of the County Clerk of Westchester, is James M. W. Martins acquiring the property from Robert J. Warburg, who is not otherwise known or shown in any previous deed, indentures, of his acquisition of the Bleakley estate property to convey title to James M. W. Martin, in which for Martin to convey forward to the Town of Cortlandt Manor.

7).    Plaintiffs believe Robert J. Warburg may have owned the property adjacent to the mobile homes now known as "Veterans Park" in which the town previously acquired from James

4

M. W. Martin in which the town had previously taken possession of by conveyance indenture from James M. W. Martin; and thereafter built a park and a public boat launch with preserved hangars of the sea plane base previously owned by James M. W. Martin; solely consisting of property gifted to the Town, and also consistent with the terms of the alleged life retaining estate in the deed and indenture signed by James M.W. Martin on February 25, 1992.

8).     Plaintiffs, upon information belief and investigative query, have allegedly been victimized by the Town, its Engineer, Vergano P.E., and Ladel Ltd., collectively, in a complex scheme to defraud the captioned petitioners out of substantial sums of money, in a new power supply system installation project after hurricane Sandy in October of 2012.

9).     The town by forcing the Petitioners/Tenants to pay for new Service overhead electrical service wires as a park Code Violation, to supply the park with new electric service feeds to the property to power the park and to bear such costs. The work was allegedly put out to bid by the herein captioned, respondents and former self-proclaimed DBA Officers of Riveredge Owners. Association, Karen Rella, aka Karen Griffith, Treasure, and Donna Turner acting president both of whom have left recently from this jurisdiction since these events occurred and unfolded.

10).    The Riveredge Owners'Association reluctantly agreed to these compelled scopes of work on or about November 17, 2012 despite nearly all of the homes not losing power. The typical landlord provides such obligations as town identifies, holding themselves out as a "Landlord" in a landlord /tenant relationship as provided in NY RPAPL Sect. 711. Landlord's would bear such utility service equipment costs as a lessor to the lessee in a lease signed on 3/2/95 by Town Supervisor, Linda Puglisi; and as the town identifies itself by designation of

their municipal capacity in the caption sheet of their petition as a "Lanlord," in their 7/18/16 Petition and planned action to recover possession. The defendant town contradicts itself in its Petition stating the landlord tenant relationship by "The lease agreement established a Landlord-Tenant relationship, but no special status was created therein between the Town of Cortlandt and the members, tenant(s) or subtenant(s) of the Riveredge Owners' Association." Such a statement from the defendants attempts to exempt the defendant of its obligations under the NY Real Property law and explicit compliance with the RPAPL. The defendant town is not in fact above or exempt from any federal, state, municipal real property or general obligations laws of NY State.

11).    On January 17, 2013 the Electrician Frank Della Gala of Adel Ltd., informed the Plainttiffs/Tenants that a significant change in the scope of work was now required by the Defendant/landlord, Town of Cortland Manor, that a change from overhead wiring which had been previously been approved by Town of Cortland Manor's issuance of multiple Electrical Permits to Ladel Ltd., to execute the required work, thereafter implemented a significant change in the scope of work as allegedly, the town required a substantial change in the nature and the scope of work approved, that permitted the typical electrical installation overhead wire feeder electrical service. This scope was changed to now be a new underground service feeds to all trailers areas involving an addition of $ 12,150.00 in addition to the original scope of work of $ 34, 550.00 and further an additional added costs to individual owners of approximately 1,225.00 per mobile home above and beyond the original amount and charges by change order.

12).    Plaintiffs investigator, during their investigation into these extraordinary additional charged burdens placed upon the Plaintiffs/Tenants, by changes of the approved scopes of work

6

already issued permits for, noted suspicious and disturbing reasons for the complete redesign by such changes indicated, that were "required" and now incorporated two months after work had begun, and discovered allegedly, the reasons for the change in the scope of work identified in the conceptual plans of the new town park, the town had published to the internet.

13). In the online published plans, it was shown that the new park was to be constructed to accommodate, new buildings, and areas of concession stands, requiring such NEMA quick dis/ connect receptacles to operate concession stands; a new outdoor theatre that typically requires such onsite external electrical NEMA plugs to power the concessions, in addition to new restaurants; all new electrical work paid for by the park residents that stands to be used in the future by the town, as well as a series of other buildings to be constructed on the site, and easily connected by minor remedial work to this new "resident paid and provided electric service equipment." It is also very noteworthy and more suspicious, that while the town destroyed these other homes, some with and without consent of their owners, all of which such NEMA quick connect plugs stations were deliberately and conspicuously left in place undisturbed during both the authorized and unauthorized mobile home demolitions. The defendant town has been prior to their lease expiration, engaged and continues to be engaging in Civil Rights violations. More importantly this required work was compelled under the guise of required code violation work, and thereby under state authority, color of office and law, now abundantly appearing for obvious future use by the town, at the expense of the Park residents representing and demonstrative of a scheme to defraud in violation of NY state law, and specifically, NY Penal Law 190.65(1)(a), (b), and (c) in the first degree; a class E Felony, against the resident members of the park.

7

The defendant town refuses to provide electrical plans of the new park despite that information being encompassed in a denied and ignored FOIL request. The conceptual plans are currently published online with those changes.

The new requirement of burying the feeder lines and forcing the installation of new "NEMA" (National Electrical Manufacturer Association) quick dis/connect plugs were ordered by the Defendant landlord to be installed and also billed to the herein captioned Plaintiffs/Tenants.

14). The Plaintiff/Tenants, herein below address and answer, by line item paragraphs, the Defendant Landlord, Town of Cortland in their Petition to "RECOVER POSSESSION OF REAL PROPERTY" before the Town of Cortland Justice Court as follows:

**Plaintiffs/Tenants Answers to Town Petition to Recover Real Property**

A-1). The deed in which the town refers to appears to contain a break in the Title Chain of the records of the County Clerk of Westchester, to the extent that Mr. James M.W. Martin appears to have acquired the property from one Robert J Warburg, of which Plaintiffs have been unable to ascertain with certainty any title or indenture of conveyance to Robert J. Warburg, yet deeded on 5/24/1974 as shown in town liber #07197 on page 00503. *See: (Plaintiffs/Tenants Exhibit Marked # "1")*

15). Plaintiffs/Tenants upon information and belief represents property actually conveyed by James M.W. Martin, consisting and indicative of the Town's existing park commonly known as "Veterans Park" boat launch.

A-2). Plaintiffs/Tenants believe answer ("A-1)."), above and the question of break in the Title Chain may more fully be answered at length during Discovery. It is noteworthy to add, that the Defendant/Landlord Town is currently in violation of the New York FOIL **(Public Officers Law §§ 84-90)** in addition to two counts of violating the The Federal Freedom of Information Act (FOIA), 5 U.S.C. § 552. *See: (Plaintiffs/Tenants Exhibit Marked # "2" FOIL Request dated (3/23/2016) and (Plaintiffs/Tenants Exhibit Marked " 3" FOIL Request dated (4/29/16); and (Plaintiffs/Tenants Exhibit Marked "4" "supplemental request by e-mailed Dated ( 5/2/16 )).*

8

A-3). PLaintiffs/Tenants respond to statement of Respondent/Town Landlord, stating the respondent/Town, if by fact is determined to own the land in question, upon production an accurate unbroken title chain, has violated and breached the terms of the alleged life estate, and the Defendant/Town Landlord's own lease agreement signed by the The Supervisor, Linda Puglisi and the Plaintiffs/Tenants Chairman, Jose A. Vicente, terms entered into on 3/2/1995. *See: (Plaintiffs Lease Agreement dated 3/2 1995 Marked as Plaintiffs/Tenants Exhibit "5" Pages 1-8).* Additionally, a Second subsequent Lease Agreement had been entered into by James M. W. Martin, by and between James Martin and Kathleen Herman dated 10/1/1996 of which terms states under item 1. of that lease, that the lessee may remain *indefinitely* at the property until such time as the lessee sells her mobile home, which to this date even, has not been sold, but was rather demolished by the Respondent/Town Landlord in secret. *See; (Plaintiffs Lease Agreement between James M.W. Martin, and Kathleen Herman marked as Exhibit # "6" pages 1-3), See also: (Plaintiffs/Tenants Exhibit Marked # "7" page 1 and 2 " Notice of Claim filed on April 12, 2016 with Defendant/Town Landlord),*

16).    It is noteworthy for the Plaintiffs/Tenants to note for the Court, that on June 7th, 2016, New York State Police Sgt., William Dexter conducted a second investigation into the Complaint of the Claimant named in paragraph 15) above, that during an interview with Respondent/Town Landlord's legal Counsel, Thomas F. Wood, Esq., the town Attorney made an admission to this investigating State Trooper in which Counsel for the Respondent/Town Landlord admitted to the Trooper, that "Kathleen Herman declined the towns offer to purchase their unit which was subsequently destroyed due to a clerical error on the town's behalf." Counselor Wood however fails to mention, is the three other units not owned or authorized to Demolished, that were in fact also destroyed in secret. Petitioners/Tenants allege the town fully Knew what homes were being demolished and did so knowingly, willfully, wantonly and with reckless disregard and abandon, as they knowingly were provided a list of all owners at the time, as a term in their drafted and executed lease with the association signed on 3/2/95 subjecting the town to treble damages as provided for pursuant to the NY RPAPL Section 835 while engaged in an ongoing scheme to defraud of 10 or more the park residents in violation of the law,

9

and specifically felony conduct contrary to provisions of, New York Penal Code 190.65 (1)(a),

(b), and (c) in the first degree, a class E Felony. The troopers failed in making an arrest despite

the admissions of the Respondent/Town Landlord's Counsel. *See: (Plaintiffs/Tenants Exhibit*

*marked # "8" " New York State Police Report dated 2/23/16 and Amended on 6/06/16 under*

*reported incident No. 6762038). (Page 1 & 2)*

A-4). Plaintiffs's state in response to Respondent/Town Landlord, that in fact the "Riveredge Owners' Association is in fact not a corporation, but an entity "Doing Business As" ( DBA) ,with a duly filed Business Certificate with the Clerk of the County of Westchester, filed on July 20, 2006 under Westchester County File No. 240981 that was fully insured.

A-5). Plaintiffs/Tenants state, that Karen Rella, A/K/A Karen Griffith, was in fact a designate business principal and a named Respondent in this federal Motion, as by appearance was engaged in conduct with the town, who just recently, agreed to relinquish her property to the Defendant/Town, Landlord for the alleged sum of $ 7,500.00 although other park residents were offered a fraction of that alleged accepted offer. Noteworthy to mention, the Plaintiffs/Tenants draw nigh this Courts attention that Karen Rella, AKA Karen Griffith is alleged to be a family member by extension (Cousin) to the captioned Respondent "Adelaide Della Galla," the Chief Executive Officer of the corporation Adel Ltd., alleged to be engaged in the scheme to defraud. Upon Rella/ Griffith's acceptance of the alleged exuberant offer, it was learned this individual promptly and recently destroyed all books and records of the business and allegedly fled when advised by phone to turn over records or be subject to a federal subpoena for those records. Upon information and belief, "Rella/Griffith, absconded with funds belonging to the business, from which the association was to pay for electrical work by her Cousin's Corporation, rather then put the allegedly required work out for competitive bid. All named principals on the original file DBA Certificate have left the Jurisdiction, and such schemes to impede to determine fraud and theft of the park residents rental fees are believe to have been stolen, leaving only subpoena authority, to obtain banking records from the bank institution, Wachovia now believed owned by Wells Fargo Bank; to determine the amount of alleged larceny. *See: (Plaintiffs Exhibits Marked "9" and "10").* Further, upon information and belief, after the demolition of Rella/Griffith's unit just recently, it is alleged that she fled the state to the Jurisdiction of the State of Hawaii. Plaintiffs/Tenants are still investigating her exact location, along with Donna Turner.

A-6). The Plaintiffs/Tenants believe the appearance of the break in the Title Chain is valid, would further represent a scheme to defraud, not only the parks residents, but also

10

the actual owners of the land or their successors or heirs, and constitute a fraudulent transfer by a void and invalid indenture executed by Martin, if in fact it is determined neither he or Robert J. Warburg, in fact authentically owned the property in which to convey again by fraudulent indenture to the Defendant Landlord Town of Cortlandt.

17). As stated previously in Paragraph 15) and as well as in Answer ("A-3). It is that belief of the association , the Parks residents , and mobile home owners were duped by schemes of financial Fraud by the Defendants' Karen Rella, the Town and Ladel Ltd.,  as it relates to the electrical work the town forced upon residents, and by costs for which such would represent financially being unjustly enriched. The existence of a second long term lease signed by James M.W. Martin entered into with Kathleen Herman as previously indicated by paragraph 15 and Plaintiffs' Exhibt "6" that the ambiguous title chain warrants much closer scrutiny and discovery by this court or an agency appointed by the District Court aside allegations of ongoing Civil Rights violations. Plaintiffs believe many federal questions as to the propriety of the Town Cortlandt's behavior and unlawful seizure falls within this Courts original Jurisdiction, and not the jurisdiction of the Respondent/Town Justice Court; aside appearance of unfair advantage favoring the town. Further discovery is needed to verify by title search, which the Plaintiffs are in the process to engage outside legal Counsel to scrupulously investigate the Chain of Title to determine the actual details of ownership and chains of indentures of conveyances', to determine accurately, the rightful Remainderman, heir and if the appearance of or fraud in the Chain of title exists. This satisfies answers of the Petitioner/Tenants answers to respondent/Towns Petitions paragraphs A-7)., A-8).,A-10) , as well as A-11).

18). Plaintiffs/Tenants strongly believe and show they have a remaining interest in the Property and are currently considering a lien thereon in the Westchester County Clerk's Office.

Particularly, if this court finds evidence provided, sufficient evidence to make an inference as to the occurrences of frauds perpetrated by the defendants, the property may be security in relief.

A-12). & A-14). Riveredge Owners' Association continues to have an interest in this property if determined they were duped into paying for exuberant electrical expenses by scheme to defraud, aside the rights conferred in a second subsequent lease entered directly into by and between the alleged previous owner" James M.W. Martin." And Kathleen Herman. The Park residents whose property was destroyed in violation of the lease and prior to the alleged expiration, are entitled to treble damages and expenses under state law pursuant to provisions set forth therein **NY RPAPL Section 835**, and by a second lease entered into with unlimited time specifically set forth in the lease term of item 1 of the second lease. That item sets forth in its terms quoting:

"Good until lessee sells mobile home" clearly identifies an interest in the property. *See: (Plaintiffs/Tenants Exhibit marked "6" "lease agreement executed by Martin and Herman dated 10/1/96").* The Defendant/Town Landlord states the association does not have the authority to execute a lease beyond the expiration of their lease, which has no force and effect on a subsequent lease made and entered into by the owner of the property, if in fact he actually was the owner of the property. A licensee is not considered a squatter under the NY Real Property law, or the Real Property Actions and Proceedings law.

19). The Town of Cortlandt Justice Court has jurisdiction over cases within its territorial boarders, yet has no jurisdiction over the causes of action giving rise from the unlawful actions and conduct that violate the constitutional due process of the residents of the park, engaged in under color law and State authority, clearly predicates the venue, subject matter, Original, Supplemental and Concurrent jurisdiction to the US District Court for the SDNY.

20). The Defendant Town, landlord, as they hold themselves out to be numerously, binds the town to both the NY Real Property and NY PPAPL laws; among others, despite contradicting their proclaimed status by their lease, yet refutes themselves in their Petition in paragraph 15)., that there exists no landlord tenant relationship, and yet tenants do not rightfully pay taxes, as stated in paragraph 15)., yet do pay rent. It is in fact by the very appearance and nature of the Towns' instant action, the Town IS the self-proclaimed landlord. The defendant's have also

12

making their Petition filing with improper proof of service defective.

21. Service of the Notices to Quit was also in fact defective as many absentee owners never received or were served those notices, nor were they sent by Certified mail; also lacking adequate proof of such service makes the their 10 day Notice also defective to any Court of competent jurisdiction. The Service is further defective as Chris Kehoe is a party in the proceedings.

**WHEREFORE,** the Plaintiffs respectfully moves this Court for the relief requested herein below.

## 22). **PLAINTIFFS/TENANTS MOVE THIS COURT FOR THE FOLLOWING RELIEF:**

22). The Plaintiffs' Move for the right to file additional Motions;

23). The Plaintiffs' Move for a stay of all State or Municipal Proceedings;

24). The Plaintiffs' Move for the right to file an amended complaint;

25). The Plaintiffs' Move for an Order restraining the defendants from any further; demolition or work at the Riveredge Mobile Home Park pending adjudicating of all of the claims set forth herein, or any amended complaint after discovery;

26). The Plaintiffs' Move the Court for Oral arguments on issues of this motion and conference hearing and;

Together with other relief this Court in its discretion and judgment, deems fair, just, equitable and proper.

Dated: October 25, 2016
Verplanck, New York 10596

Respectfully submitted,

John Moynihan, Plaintiff Pro Se,
37 River Avenue
P. O. Box 486
Verplanck, New York, 10596
914-960-1847

*Blueskyto*
*1967 To Mike Swan Neuley*

Land Search By Name Results

| Image | Name | Party | Other Party | File Date | Doc | Town | Control#/LbrPg | Notes | Details |
|---|---|---|---|---|---|---|---|---|---|
| | ☒Martin James M W | 2nd | Warburg J Robert | 1974/05/24 | DED | Cortlandt | 07197/00503 | N | Details |
| | ☒Martin James M W | 1st | Cortlandt Town Of | 1992/02/28 | DED | Cortlandt | 10234/00173 | N | Details |
| | ☒Martin James M W | 1st | Cortlandt Town Of | 1992/02/28 | DED | Cortlandt | 10234/00183 | N | Details |

~ Warburg to Martin ~

No deed showing Transfer From Martin To Anyone ~

Jo-Ann Dyckman, Records Access Officer
Town of Cortlandt
1 Heady Street
Cortlandt Manor, N.Y.  10567
Fax # (914) 734-1102

*Plaintiff's Exhibit # "2"*

## FREEDOM OF INFORMATION REQUEST

*Freedom of Information requests are pursuant to the N.Y. State Freedom of Information law, Article 6 of the Public Officers Law.*

**There will be a charge for copies in accordance with New York State Law.

If any portion of the request is denied, said denial can be appealed by addressing the Town Supervisor in writing.  The address:  Town Supervisor
1 Heady Street
Cortlandt Manor, N.Y.  10567

<u>INFORMATION REQUESTED: Identify and describe the records you are requesting as clearly as possible</u>

1) ALL CORRESPONDENCE TO ME & FROM TOWN OF CORTLAN
REGARDING #45 IN RIVEREDGE VERPLANCK
2) WORK ORDER TO DEMO #45
3) DEMO PERMIT TO DEMO #45
4) ANY DOCUMENTATION PERTAINING TO HOW TOWN DECIDED
TO DEMO #45.

please check one:

✓ I wish to have copies of the above

---- I would like to review said documents

sign name _[signature]_

print name  Kathleen HERMAN

address  52 PINE HILL Rd
Pleasant Valley NY
12569

phone#  914 980 2219

date  3/23/16

fee
16 pages - $4.00

**RECEIVED**
MAR 23 2016
**TOWN CLERK**

**RECEIVED**
[illegible] 4 [illegible]

DEPT. OF TECHNICAL SERVICES
PLANNING DIVISION



Plaintiff's Exhibit "3"

# TOWN OF CORTLANDT
## 1 HEADY STREET
## CORTLANDT MANOR, NY 10567

### FREEDOM OF INFORMATION REQUEST

RECEIVED
APR 29 2016
TOWN CLERK

The Town is required to respond to a request within five (5) business days, wherein they must advise whether or not this information will be available. The time period begins the day after the request is received.

In addition, if the copying fee is in excess of $5.00, the applicant will be advised and responsible for payment of the copying fee prior to the information being copied. If the copying fee is less than $5.00, same will be supplied and the applicant will be responsible for said fee.

If any portion of the request is denied, said denial can be appealed by addressing the Town Supervisor in writing. The address: Town Supervisor, 1 Heady Street, Cortlandt Manor, NY 10567.

ATTN: Chris Kehoe

## INFORMATION REQUESTED:

ALL RECORDS Relative To Demolition of Lot #45 Recent ELEC. Permit Ref. 20120726
ALL INVOICES Relative To Payment OF Demolition Including
ALL Contractors USED AND CONTACT INFORMATION

Sign Name

Print Name    JEFF Chiazza

Address    52 Pine Hell Rd Pleasant Valley ny 12569

Phone    914-774-7680

Date 4/29/16

Received By

**From:** IgQ3]4G <roofersrwe@aol.com>

  **To:** chrisk <chrisk@townofCortland.com>

  **Cc:** kathishow <kathishow@verizn.net>

  **Bcc:** Roofersrwe <Roofersrwe@aol.com>

**Subject:** Riveredge Trailer Park, Verplanck, NY: Lot No. 45

  **Date:** Mon, May 2, 2016 4:11 pm

*Plaintiffs' Exhibit # "4"*

---

**Mr. Chris Kehoe, AICP**
**Town of Cortlandt Planning Department**
**1 Heady Street**
**Cortlandt Manor, New York 10567-1254**
**914-734-1080**
**914-788-0294-Facsimile**
**E-mail: chrisk@townofcortlandt.com**


Dear Mr. Kehoe;

I am writing to follow up from my phone message left Sunday May 1st, 2016 at 7:52 PM regarding the subject property and former property of the late James Martin deeded to the town, with retaining Life Estate found at Weschester County Records on page 137 of Liber 10234.


I request a return correspondence reply, with an appointment date to review the Aviation Parks new electrical plans for the New Aviation park in Verplanck NY, in addition to the Electrical permit applications submitted by Ladel Ltd., License No.: # 4163; and the electrical contractor, and in particular reference, to **electrical permit #20120726.**

As you may or may not know, the Town of Cortlandt, caused and paid for this property to be demolished earlier this year, using Town employees, equipment and resources under color of law and office without Notice, knowledge of the owner's or their consent.

Doing so in secret, denied the lawful due process of the property owners Kathleen Herman and Jeffrey Ghiazza, causing six figure financial losses, of long term future rental income losses; who were preparing the home for removal to their 6 acre property in Pleasant Valley NY. Aside violations of their constitutional due process rights, the takings clause of the 5th amendment among a host of other violations; the act constitutes a violation of the NY Penal law, section 155.40 a C Felony due to the values involved.

Although the incident was reported to the New York State Police on February 23, 2016, it was incorrectly designated a "civil" matter when the town in fact used its employees to unlawfully enter the property by forced entry under color of law, into a unit that was being newly remodeled. The unit was winterized at the time of the forced unlawful entry, not abandoned while Town employees engaged in felony Grand Larceny of new appliances, materials and other property was taken aside the future rental value of the unit, prior to the unit demolition.

Further, it is indicated that a sibling of one the Homeowners association executives; in which the Town executed a lease agreement with Riveredge Owner Association executives by signature with Supervisor, Linda Puglisi on 3/2/1995 are directly involved in the sale of some of the stolen property and posted on Facebook by photograph, which has been collected for investigative and identification purposes.

It is my firm belief after conversation with the Office of the Deputy Superintendent, Terrance O'Harra, of the New York State Police, in Albany NY, that a criminal investigation will be commenced and ensue further into these matters.

The property owners are also copied in this e-mail communication to you.


Kindly advise the undersigned of your earliest appointment time available for the information review. A FOIL was filed in your Office on 4/29/16 Stamped by the Town Clerk the same day, received by Mr. Kenneth Koch. Kindly incorporate this additional

requested information therein that FOIL request.

Thank you for your assistance and attention to this matter.

Plaintiffs Exhibit # "4"
Page 2

PATRICK GARVEY, Owners Advocate
2094 Albany Post road
Montrose, New York 10548
845-249-7194
E-mail: roofersrwe@aol.com

Plaintiffs Exhibit
# "5"
Pages 1-8

## LEASE AGREEMENT

**THIS AGREEMENT**  made by and between **THE TOWN OF CORTLANDT**, a Municipal Corporation having its principal place of business at 1 Heady Street, Cortlandt Manor,  New York, (hereinafter referred to as the "TOWN\LANDLORD"), and **THE RIVEREDGE OWNERS' ASSOCIATION** having its principal place of business on Riverview Rod, Verplanck, New York, (hereinafter referred to as "ASSOCIATION\TENANT"), and

**WHEREAS,** the TOWN has become the owner in Fee Simple of 26 acres of riverfront property formerly owned by James Martin, and

**WHEREAS,** the gift of property to the TOWN was subject to a Life Estate in favor of James Martin for his continued operation of a Trailer Park, and

**WHEREAS,** the TOWN and the ASSOCIATION are desirous of entering into an Agreement to reflect their rights and interests following the death of James Martin, or the earlier termination of his life estate in the area utilized by the ASSOCIATION, and

**WHEREAS,** it is the desire of both the TOWN and the ASSOCIATION to set forth these rights,

**NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:**

1.  **Term:**  The parties acknowledge that this Agreement shall be immediately binding upon them, but none of the terms and conditions herein shall become effective until the death of James Martin, or the earlier termination of his Life Estate in the subject premises. Upon the happening of either the death of James Martin, or the earlier termination of his Life Estate, this Agreement shall be effective for a period of ten (10) years from the date thereof.

2. **Property:**  This Agreement shall effect that area used by the ASSOCIATION for the use and occupancy of the ASSOCIATION's members for their principal residences which said area is specifically described in Schedule A annexed hereto and made a part hereof.

3. **Exclusive Use:** The parties agree that the TENANTs shall have the exclusive use and possession of the above described property and shall be allowed to utilize the same for the use of its members' use and occupancy of their Mobile Homes on said site.

4. **Zoning:**  The TOWN does hereby represent and acknowledge that the present use of the subject premises is for a Mobile Home Park and that the TOWN acknowledges that said use is a pre-existing non-conforming use which may be continued, but which may not be expanded or enlarged. It is specifically agreed and understood that none of the present units on the premises may be enlarged, or expanded in any manner. The parties acknowledge that the site is presently used and occupied by 45 Trailers.

5. **Right to Sublet:**  The parties specifically acknowledge that the TOWN is leasing to the ASSOCIATION the land upon which the ASSOCIATION operates its Trailer Park. The parties specifically agree that the TENANT has the right to sublet said property for the use and occupancy of its members and their successors and/or assigns for the period not to exceed the term of this agreement.

6. **Notice of Sublease:**  The TENANT hereby agrees to give to the TOWN within thirty (30) days following the effective date of

2

the term of this Agreement, a complete list of all of the subtenants of the ASSOCIATION and agrees to update said list upon the request of the TOWN and to notify the TOWN of any changes with respect to these names and addresses of any subtenants. The parties specifically acknowledge that the TENANT shall have the right to sublet to any person for the use and occupancy of the Mobile Homes on said site. However, none of the said subleases shall extend beyond the term of this Agreement. The TENANT agrees to provide to the TOWN written acknowledgement by the subtenant of the existence of this Lease Agreement with specific acknowledgement of the expiration contained herein.

7.    **Real Estate Taxes:**    The parties acknowledge that the Tenants will not have to pay any real estate taxes with respect to their use of the property.

8.    **Town Code Violations:**    The TOWN represents and warrants to the TENANT that as of the date of this agreement the TOWN knows of no violations of any Town, Zoning Law, or any other Town Ordinance, including, but not limited to the New York State building & Fire Prevention Code, other than those which have been set forth in Schedule B contained herein. The TENANT agrees to keep the property free of any violations of the New York State Fire Prevention Code and any other Ordinances, Rules or Regulations of the TOWN during the term of this Agreement, and shall not allow any of their sub-tenants to create any violations or allow any violations to exist on any subtenants' leasehold.

<u>3</u>

9.   **Health Department Regulations**:   The TENANT acknowledges that the TENANT has had full disclosure by the Westchester County Department of Health as to the present status of all of the Health Department Permits and violations with respect to the subject premises and agrees to accept the premises in an "AS IS" condition subject to the rules and regulations of the Department of Health and any violations that are presently outstanding, if any. The ASSOCIATION acknowledges that the TOWN will have no responsibility with respect to compliance with any rule, order or regulation of the Department of Health and that the TOWN is not obligated to take any steps to keep the property in compliance, and that the TENANT will be solely responsible to keep the property in full compliance with all Department of Health Rules and Regulations.

10.   **Mobile Home Operator**:   The parties hereby specifically acknowledge that the TOWN is not a Mobile Home Operator. That the TOWN is leasing the entire subject premises to the TENANT, and that the TENANT be deemed to be a Mobile Home Operator as defined by the provisions of the Real Property Law of the State of New York, and the TENANT agrees to comply with all of the provisions of said law and any rules and regulations promulgated thereunder by the State of New York.

11.   **Liability**:   The TENANT agrees to indemnify and hold the TOWN harmless from any and all liability arising out of the TENANT's use and occupancy of the subject premises.   The TENANT agrees to provide the TOWN with a Certificate of Liability Insurance naming the TOWN as an additional insured. Said policy

4

shall specifically provide that the carrier shall be responsible for the defense of any liability claims arising out of the TENANT'S use and occupancy of the subject premises.

12. **Enforcement:** The Association hereby agrees to enforce all of the terms and conditions of this Lease Agreement and shall preserve all of the terms and conditions of this Lease Agreement in any sublease granted on the subject premises. The Association grants unto the TOWN the right to enforce any sublease that may be entered into by the Association. Should the Association fail to properly enforce same within fifteen (15) days following notice by the TOWN of a violation of any sublease or any term or condition of this Agreement.

13. **Town's Limited Responsibility:** The parties hereby acknowledge that the TOWN is prohibited from spending any public funds in the furtherance of any of the terms and conditions of this Agreement. The parties acknowledge the provisions of Article 8 of the Constitution of the State of New York specifically prohibit the TOWN from expending any public funds for any private purpose. Thus, if the TENANT is unable to keep the property in compliance with any rules and regulations of the New York State Department of Health or the New York State Building or Fire Prevention Code, then the TOWN will have no liability and no responsibility to make any improvements or repairs to the subject premises due to the provisions of the State Constitution.

14. **Notices:** That any notices to be served upon the TOWN shall be delivered to the Town Clerk by certified mail, return

5

receipt requested, or by personal delivery thereof, upon the Town Clerk of the Town of Cortlandt at the Municipal Building, 111 Oregon Road, Cortlandt Manor, New York 10566. Any notices to the TENANT shall be delivered to

Each party agrees to advise the other in writing within thirty (30) days following the change of any address or name of any party to whom official notices should be delivered.

15. **Risk of Loss:** Upon the effective date of this agreement, the risk of loss of any property on the subject premises shall be the responsibility of the TENANT. The TENANT shall have full and sole obligation for insuring the same against loss and the LANDLORD shall bear no responsibility for any loss occasioned by fire or any other force.

16. **Condition of Premises:** In addition to compliance with all of the other terms and conditions herein, the TENANT agrees to keep the property clean and to properly maintain the same by the mowing of lawns and the designation of a specific area for the refuse collection bins for the use of the premises. The TOWN agrees to collect refuse from the subject premises as long as the same is in compliance with the rules and regulations of the TOWN then in effect. The TOWN agrees to plow the roadway through the subject premises in times of snow and to fill any potholes that might exist in said road as determined appropriate by the Superintendent of Highways. This action is being taken for the health, welfare and safety of the residents of said park.

17.    **Quiet Enjoyment**: The parties hereby acknowledge the right of the TENANTS' peaceful and quiet enjoyment of their Leasehold. The TOWN agrees to respect the quiet use and enjoyment of the TENANT with respect to the TOWN's utilization of any properties adjacent hereto. The TOWN specifically acknowledges that the adjacent properties shall be used by the TOWN for park purposes and that said use shall be consistent with the TOWN's use of other like properties owned by the TOWN throughout its boundaries.

18.    **Default and Termination:**    Should the TENANT become in default of any of the terms and conditions of this Agreement, the TOWN shall give to the TENANT thirty (30) days written notice of said TENANT's default. If the TENANT fails to commence steps to cure the default in the subject Lease, the TOWN shall, thirty (30) days written receipt of notice by the TENANT, have the right to declare the TENANT in default and terminate the terms and conditions of this Lease.

19.    **Termination**: Upon the expiration of the term of this Lease, or upon the abandonment of the premises by the TENANT, any and all property on the subject premises not taken by the TENANT or removed by the TENANT from the premises by the date of expiration of this Lease, shall be deemed to be abandoned property and ownership of which shall be revert to the Town of Cortlandt. The TENANT agrees that this provision shall be contained in all of the subleases entered into by the TENANT with any subtenants thereon. Any properties abandoned on the premises at the expiration of this

7

Lease may be removed by the TOWN and destroyed, sold, or otherwise disposed of without any other further liability to the TENANT or the owner thereof.

20.   **Enforcement:**   The parties specifically agree and acknowledge that this Agreement creates a LANDLORD-TENANT relationship and that any disputes determining the same may be addressed under the provisions of the Real Property Actions and Proceedings Law as those provisions relate to Landlords and Tenants, and that no special status is created herein between the TOWN and the TENANT or any subtenants as herein set forth.

29.   **Miscellaneous:**   It is hereby agreed between the parties that should any of the Trailers whose owners or members of the River Edge Association need to be moved, to be within the leaed area, that the Town of Cortlandt agrees to bear the cost and expense of the moving of said Trailer into the leased area.

IN **WITNESS WHEREOF,** the parties hereunto set their hands and seal the date above written.

3/2/95

THE TOWN OF CORTLANDT

BY: _____
      SUPERVISOR

RIVEREDGE OWNERS' ASSOCIATION

BY: (Chairman) Jose A. Vicente

Co/CHMN.

Treas

8

Plaintiffs Exhibit # "6"

Pages 1-2          10/1/96

# AGREEMENT FOR THE LEASE OF MOBILE HOME PARK LOT

_Jim Martin_ , as Lessor (hereinafter "Lessor") hereby leases and demises to _KATHLEEN HERMAN_ as Lessee (hereinafter "Lessee"), that certain mobile home park (hereinafter the "Park") lot described more fully as Lot No. _45_, of _Riveridge Trailer_ Park, located in _Westchester_ County, State of _New York_ :

(INSERT LEGAL OR OTHER DESCRIPTION OF LOT TO BE LEASED)

Lessor and Lessee in exchange for mutual covenants and other good and valuable consideration do hereby that this Agreement is subject to the following terms and conditions: ❋ _Good until lessee sells mobile home_

❋ 1.    **Term and Termination.** The initial term of this Agreement is for a period of _____ (weeks, months, years) from the date hereof and shall terminate on the _____ day of _____, ██__. Lessee shall have the option to renew this Agreement at the end of the initial term for a like period, provided however, that Lessee provide notice of such renewal to Lessor _____ days prior to the expiration of the initial term. A party desiring to terminate this Agreement for the failure of the other party to comply with the terms of this Agreement shall provide _____ days notice of such non-compliance to the other party. If the non-compliance is not cured within that _____ day period, then the Agreement shall be deemed to be terminated. In that event, no further rent shall be due if termination is effected by Lessee. If termination is effected by Lessor, this Agreement shall not bar the institution of eviction proceedings or collection for holdover rent against Lessee.

2.    **Access and Parking.** Lessor shall provide Lessee with access to the above described lot at all times, save and except for such reasonable and necessary restrictions as may be applicable to preserve the general health and security of tenants of the Park. Lessor shall provide Lessee with a written copy of such restrictions at the time of the signing of this Agreement.

3.    **Rent.** Lessee shall pay to Lessor the amount of $_260_ per (week/month) for the lease, demise and use of the above described lot. Such rent shall become due and payable beginning on the 1st day of _each_ (week/month) and thereafter on the same day of each succeeding week/month for the balance of the term of this Agreement.

4.    **Late Charges.** In the event that any rental amount recited in the above Article 3 of this Agreement is not paid within _15_ days of the date due, Lessee shall pay unto Lessor the additional amount of $_25_ as a late charge.

5.    **Use of Premises.** Lessee agrees to use the Lot for residential purposes only and not to permit the use of the Lot for any illegal purposes. Lessee further agrees not to use or to permit use of the Lot in a manner which causes violation of any health

code or ordinance or which creates a public or private nuisance.

6. **Assignment.** Lessee shall not have the right to assign or to sublet any right or interest created by this Agreement without first obtaining the written consent of the Lessor, who shall not unreasonably withhold such consent. If such consent shall be obtained, Lessee shall remain liable for the payment of rent and for the performance of all other terms and conditions contained herein.

7. **Removal of Equipment, Furnishings and Improvements.** Lessee shall have the right to remove all equipment, furnishings, improvements placed by Lessee upon the Lot at any time, including but not limited to the date of termination hereof.

8. **Indemnity and Insurance.** Lessor and Lessee shall indemnify and save harmless each and the other for any claims, losses, and actions of all kinds for any violation (s) of the terms and conditions of this Agreement, subject only to Article 9 herein below.

9. **Liability.** Lessor and Lessee shall be liable to each other only for those negligent or intentional acts which are caused by and which cause damage to the either or the parties hereto.

10. **Notice.** Any notice made under this Agreement shall be deemed effective upon the date delivered if made by personal service and posting at a party's address as listed herein or upon the date of mailing if made by registered or certified United States mail, return receipt requested. The addresses of Lessor and Lessee for the payment of rent and for notice and any other provisions under this Agreement are as follows:

LESSOR

_____
_____
_____

LESSEE

*~~45 Front Lane~~*
*~~Verplanck, NY~~ 10596*

✱MAILING ADDRESS PoBox 331 Buchanan NY
/ 051

11. **Utilities.** Lessor agrees to provide such usual and customary utility hookups for electricity, gas (natural/butane/propane) as are currently made available to tenants of the Park generally. Lessee agrees to be responsible for and to pay for any service charges, monthly usage charges or other costs incurred for the connection and use of the utilities provided.

12. **Entirety.** This Agreement contains all of the terms and conditions made between the parties hereto for the lease and demise of the above described Lot and may be modified only by a subsequent written agreement signed by both parties.

13. **Governing Law.** This Agreement shall be governed by and construed in accordancethe laws of the State of _New York_.

WITNESS THE SIGNATURES of the parties to this Agreement on this the _1 ST_ day of _October_, _1996_

10/2/96

LESSOR

LESSEE

*Plaintiffs Exhibit    7*

**Kathleen M. Herman and Jeffery A. Ghiazza, Claimants**
**52 Pine Hill Road**
**Pleasant Valley, New York 12560**
**914-980-2219**
**914-774-7680**
**E-mail: the kathishow@verizon.net**

To:   Jo-Anne Dyckman, Cortland Town Clerk          4/11/16
      Office of the Town Clerk of Cortland New York
      1 Heady Street Main
      Cortland Manor New York 10567

                              **Certified Mailer: 7014.2870.0000.0888.6030**
                              **And Served by Personal Service**

Re: Claimants: Kathleen M. Herman and Jeffery A. Ghiazza
DOB:  7-19-53 and 11-17-62
Dates of Incidences: February 18 and February 19, 2016
                    <u>**NOTICE OF CLAIM**</u>

Dear Clerk,   *Jo-Anne Dyckman*

My name is Jeffery Ghaiazza, one of the claimants' above against the Town of Cortland
for damages suffered on the dates indicated above. This claim is being tendered pursuant
to Section **50-E of the General Municipal law.**

**PLEASE TAKE NOTICE** that claimants specifically calls for the preservation of all
work orders, electronically stored information ("ESI") e-mail records, and subcontract
agreements, invoiced payments in reference to demolition of property by the town of
Cortland at Riveredge Trailer Park; claimants 45 Front Lane, property, reported to the
NY State Police on 2-23-16 at 12:45 PM; demolished between January, 2016 to
February, 2016, and any radio transmissions, written communications and town water
department records of utility disconnects for future production in a District Court civil
action pursuant to **Fed. R. Civ. P. Rule 26(a) (1); Rule 34,** and in accordance with **Fed.
R. Evid. Rule 901(b) (4)** and **Fed. R. Civ. P. Rule 26 (b) (1)** as they pertain to e-mails,
narrative reports, other than attorney work product. Claimants' supporting affidavit shall
be provided and filed under separate cover.

**PLEASE BE FURTHER ADVISED** that failure to preserve this important physical
evidence may constitute spoliation or tampering with evidence and may result in
sanctions on motion pursuant to **Fed. R. Evid. 37(e)** among others penalties.



Kindly direct any communication to the address of the undersigned above.
Thank you for your attention.

_____     Signature Date: April 11, 2016
JEFFERY A. GHIAZZA, Claimant


_____     September Date April 11, 2016
KATHLEEN M. HERMAN


NOTARY: Before me this day of April 12, 2016 came Jeffery A. Ghiazza and
Kathleen M. Herman who made know to me to be the individuals executing the
foregoing Notice of Claim and swears under penalty of perjury to be the
individuals executing same.

LISA A BURNETT
Notary Public - State of New York
NO. 01BU6234901
Qualified in Dutchess County
My Commission Expires 1/31/2019

Notary Signature                    Notarial Stamp of Acknowledgment 4-12-16

Page 2

| 1. Agency K3 TROOP K - ZONE 3 | 2. Div/Precinct K331 | New York State INCIDENT REPORT | 3. ORI NY1590200 | 5. Case No. | 6. Incident No. 6762038 |
|---|---|---|---|---|---|

| 7,8,9. Date Reported (Day, Date, Time) TUESDAY 02/23/2016 12:45 | 10,11,12. Occurred On/From (Day, Date, Time) TUESDAY 02/23/2016 12:45 | 13,14,15. Occurred To (Day, Date, Time) |
|---|---|---|

| 16. Incident Type CIVIL-CIVIL MATTER | 17. Business Name RIVER EDGE TRAILER PARK |
|---|---|

**19. Incident Address (Street Name, Bldg. No., Apt. No.)**
45 FRONT LN

**20. City/State/Zip**
VERPLANK NEW YORK 10596

| 21. Location Code (TSLED) CORTLANDT TOWN 6051 | 23. No. of Victims 0 | 24. No. of Suspects 0 | 26. Victim also Complainant? |
|---|---|---|---|

**Location Type**
OTHER RESIDENTIAL

## ASSOCIATED PERSONS

| 25. TYPE | Name (Last, First, Middle, Title) | DOB | Street Name Bldg., Apt.No., City, State, Zip | Res Phone Bus Phone |
|---|---|---|---|---|
| COMPLAINANT | GHIAZZA, JEFF | 11/17/1962 | 52 PINE HILL RD PLEASANT VALLEY NY 12569 | (914)744-7680 |
| LAWYER | WOOD, THOMAS | | 1 HEADY ST CORTLANDT MNR NY 10567 | (914)736-0930 |
| OWNER | HERMAN, KATHLEEN | | NY | |

## NARRATIVE

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 02/23/2016 | 02/23/2016 | VEGA, AMANDA (TPR) |

**Narrative**

INITIAL/CLOSING

On today's date, Jeff Ghiacca came to SP Cortlandt to report a civil complaint. Upon arrival I interviewed Mr. Ghiacca who stated that on February 22nd in the evening he noticed his trailer located at 45 Front Ln, Verplanck NY 10596 was missing. Mr. Ghiacca does not live at said residence but does own the property. Mr. Ghiacca stated that at no time did he give anyone permission to remove said trailer from that location. Mr. Ghiacca knows the Town of Cortlandt has been purchasing surrounding properties and had offered to purchase his property in the fall/winter 2015; however he declined. Mr. Ghiacca stated he was going to speak with the Town of Cortlandt regarding this issue and wanted the incident documented. No further SP action at this time.

CBI

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 06/06/2016 | 06/06/2016 | DEXTER, WILLIAM (Z/SGT) |

**Narrative**

On 06/06/16 I interviewed Town of Cortlandt Attorney Thomas Wood relative to this complaint. Wood stated that the trailer in question was located in the River Edge Trailer park on Riverview Ave in the Verplanck section of the Town of Cortlandt. The landed had been willed to the Town by the former owner James Martin with the stipulation that the the tenants at the time of his death could remain on the property for ten years from the time of his death which would be July 11, 2016.

Leading up to this date, the Town of Cortlandt had been offering to purchase each unit from the owners at a fair market value. The units were then deeded to the Town and destroyed with the ultimate goal of making the entire parcel a town park. Wood stated that Ghiazza and his partner, Kathleen Herman declined the town's offer to purchase their unit which was subsequently destroyed due to a clerical error on the town's behalf.

Wood stated that he had acknowledged to Herman the town's mistake and attempted a monetary reconciliation. Herman provided him with her 1998 bill of sale but the two were unable to come to agreement. He has since tried several times to contact her with negative results. Wood stated he turned the case over to the town's insurance company for final settlement.

6/23/2016    16:59:45

PLAINTIFFS Exhibit "8"

Investigation into this matter has failed to disclose any level of criminality in the removal and destruction of Ghiazza's trailer. Ghiazza was advised to follow up with the town's insurance company as the matter is of civil nature.

CBI

Case 1:16-cv-08489-GBD    Document 1    Filed 10/28/16    Page 33 of 62

## ADMINISTRATIVE

| 74. Inquiries | 75. NYSPIN Message No. | | 76. Complainant Signature | |
|---|---|---|---|---|
| 77. Reporting Officer Signature (Include Rank)<br>TPR AMANDA VEGA | | 78. ID No.<br>1409 | 79. Supervisor Signature (Include Rank)<br>SGT SHANNON MORRISON | 80. ID No.<br>2331 |
| 81. Status<br>CLOSED BY INVESTIGATION | 82. Status Date<br>02/23/2016 | | 83. Notified/TOT | |

Solvability Total    0

6/23/2016    16:59:45



Westchester County Clerk
*Timothy C. Idoni*

0240981

## BUSINESS CERTIFICATE FOR PARTNERS

The undersigned do hereby certify that they are conducting or transacting business in the County of Westchester pursuant to Section 130 of the New York State General Business Law as members of a partnership under the name or designation and at the address of:

Plaintiffs' Exhibit # "9"

RIVEREDGE OWNERS' ASSOCIATION
P.O. BOX 310
VERPLANCK, NY. 10596

**FILED**

JUL 20 2006

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

We do further certify that the full names of all the persons conducting or transacting business in said partnership and the residence address of each such person, and the age of any who may be infants, are as follows:

| NAME: *specify which are infants and state ages* | RESIDENCE |
| --- | --- |
| KAREN RELLA | 53 RIVERVIEW AVE, VERPLANCK NY 10596 |
| Donna Turner | 49 HARDY ST. Verplanck NY, 10596 |
| Debbie Juckett | 16 Riverview Ave, Verplanck NY. 10596 |

WE FURTHER CERTIFY that we are not infants as defined by law unless so indicated, and are successors in interest to

☐ Consultant Services
☐ Educational Services
☐ Entertainment-Recreation
☐ Finance-Insurance Services
☐ Home Improvement Services
☑ Other   HOME OWNERS' ASSOCIATION

☐ Medical – Home Care Services
☐ Professional – Technical Services
☐ Real Estate Services
☐ Retail Trade
☐ Wholesale Trade

IN WITNESS WHEREOF, We have this   20   day of   July   20 06   made and signed this certificate.

*Karen Rella*
*Donna Turner*
*Debbie Juckett*

State of New York,
County of Westchester   ss.:

this   20ᵗʰ   day of   JULY   20 06   , before me personally appeared
KAREN A RELLA, DONNA TURNER AND DEBBIE A JUCKETT
known and known to me to be the individual(s) described in, and who executed the foregoing certificate, they thereupon duly acknowledged to me that they executed the same.

*Debra Beth Rothstein*

**DEBRA BETH ROTHSTEIN**
NOTARY PUBLIC, State of New York
No. 02RO6013652
Qualified in Westchester County
Commission Expires September 21, 20 10

Print

PLAINTIFF'S EXHIBIT
10

Business Filing details

Details For        RIVEREDGE OWNERS ASSN                          File No # 240981

File Date : 2006/07/20

Address :  POB 310, VERPLANCK, NY 10596

Owner :

Amendment(s)

| File ID | Name | File Date | Amend Date | Discontinue Date | Description |
|---------|------|-----------|------------|------------------|-------------|
| 240981 | RIVEREDGE OWNERS ASSN | 2006/07/20 | | | DBA |

# AFFIDAVIT OF SERVICE

State of New York          )
County of WESTChesTER    )

The undersigned being duly sworn, deposes and says:

PATRICK GARVEY _____ is not a party to the action, is over
_____(name of person serving papers)_____

18 years of age and resides at 2094 ALBANY POST ROAD BLDG.52 _____

MONTROSE, NEW YORK 10548-0100 _____
_____(complete address of person serving papers)_____

That on JULY 15 2016 _____, deponent served the within
_____(date of service)_____
NOTICE & MOTION TO REMOVE TO US DISTRICT COURT TOWN OF CORTLANDT CASE: K-12164
_____(name of document[s] served)_____

upon TOWN OF CORTLANDT CLERK AND ALL PARTIES IN THE SERVICE LIST _____ located at
_____(name of person/corporation served)_____

1 HEADY STREET, CORTLANDT MANOR, NEW YORK 10567 _____
_____(complete address where other party/corporation served)_____

(Select method of service)

XXX Personal Service: by delivering a true copy of the aforesaid documents personally;
deponent knew said person/corporation so served to be the person/corporation described.
                                                                    TOWN OF CortlANDT Clerk
                                                                    TOWN of CourtLANDt Court Clerk
XXXX Service by Mail: by depositing a true copy of the aforesaid documents in a postpaid
properly addressed envelope m a post office or official depository under the exclusive care
and custody of the United States Postal Service, upon THE ATTACHED SERVICE LIST.

_____
Signature of person serving papers

                                        PATRICK GARVEY
                                        Printed Name

Sworn to before me this 15th

day of JULY 2016

_____
Notary Public

ELISE M. LANDESBERG
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LA6205175
Qualified in Westchester County
My Commission Expires May 04, 2017

STATE OF NEW YORK
TOWN OF CORTLANDT    JUSTICE COURT
COUNTY OF WESTCHESTER
--------------------------------------------------------------------X

TOWN OF CORTLANDT,                                    Index No. _____
                          Petitioner/Landlord,

                                                      **NOTICE OF**
                                                      **PETITION TO**
        -against-                                     **RECOVER POSSESSION**
                                                      **OF REAL PROPERTY**


RIVEREDGE OWNERS ASSOCIATION,
Brian Porteus, Thomas Underwood,
Jane Doe I, Wayne Calley, Jose A.Vicente,   Frank
LaForgia, John Doe I, Elliot Rosenthal, Sylvia Pelaev,
Jane Doe II, Gonzalo Zhingri, John Doe II, Joan Juckett,
Arthur Sell, Debbie Juckett, Ted Oswald, Charity Oswald,
Mike Lane, Betty Lane, John Moynihan,
Richard Bonavita, Margaret Anesi, Alice Crowe
Walter Perry, John Does IV, V and VI,

                          Respondents/Tenants.
--------------------------------------------------------------------X

**PLEASE TAKE NOTICE**

PETITION ON BEHALF OF:        TOWN OF CORTLANDT

DATE, TIME, PLACE:

                    Hon. GERALD M. KLEIN
                    TOWN OF CORTLANDT JUSTICE COURT
                    One Heady Street
                    Cortlandt Manor, NY 10567
                    July 18, 2016
                    12:00 p.m.

SUPPORTING PAPERS:    VERIFIED PETITION
                      DEED RETAINING LIFE ESTATE
                      LEASE AGREEMENT
                      CERTIFIED DEATH CERTIFICATE
                      AFFIDAVIT with EXHIBIT

RELIEF SOUGHT:        (1) Final Judgment pursuant to RPAPL Section 747 awarding
                      possession of the property set forth herein to the
                      TOWN OF CORTLANDT
                      (2) Issuance of a warrant pursuant to RPAPL Section 749 to remove
                      the respondents from the property

Dated:   July 5, 2016
          White Plains, New York

Yours, etc.,
HODGES WALSH & MESSEMER, LLP

*Paul E. Svensson*

Paul E. Svensson
Attorneys for Petitioner
Town of Cortlandt,
55 Church Street, Suite 211
White Plains, NY 10567

SERVICE LIST

RIVEREDGE OWNERS ASSOCIATION
c/o Karen Rella
41 Riverview Avenue
P.O. Box 310
Verplanck, NY 10596

BRIAN PORTEUS
1 Riverview Avenue
Verplanck, NY 10596

THOMAS UNDERWOOD
4 Riverview Avenue
Verplanck, NY 10596

ROSEMARIE UNDERWOOD
5 Riverview Avenue
Verplanck, NY 10596

THOMAS UNDERWOOD
5 Riverview Avenue
Verplanck, NY 10596

THOMAS UNDERWOOD
11 Riverview Avenue
Verplanck, NY 10596

WAYNE CALLEY
17 Riverview Avenue
Verplanck, NY 10596

JOSE A. VICENTE
19 Riverview Avenue
Verplanck, NY 10596

FRANK LaFORGIA
23 Riverview Avenue
Verplanck, NY 10596

ELLIOT ROSENTHAL
27 Riverview Avenue
Verplanck, NY 10596

SYLVIA PELAEV
2 Riverview Avenue
Verplanck, NY 10596

JANE DOE II
2 Riverview Avenue
Verplanck, NY 10596

GONZALO ZHINGRI
8 Riverview Avenue
Verplanck, NY 10596

JOHN DOE II
8 Riverview Avenue
Verplanck, NY 10596

JOAN JUCKETT
10 Riverview Avenue
Verplanck, NY 10596

FRANK SEBOK
14 Riverview Avenue
Verplanck, NY 10596

DEBBIE JUCKETT
16 Riverview Avenue
Verplanck, NY 10596

TED OSWALD
24 Riverview Avenue
Verplanck, NY 10596

CHARITY OSWALD
24 Riverview Avenue
Verplanck, NY 10596

MIKE LANE
33 Riverview Avenue
Verplanck, NY 10596

BETTY LANE
33 Riverview Avenue
Verplanck, NY 10596

JOHN MOYNIHAN
35 Riverview Avenue
Verplanck, NY 10596

RICHARD BONAVITA
37 Riverview Avenue
Verplanck, NY 10596

MARGARET ANESI
47 Riverview Avenue
Verplanck, NY 10596

ALICE CROWE
47 Riverview Avenue
Verplanck, NY 10596

WALTER PERRY
51 Riverview Avenue
Verplanck, NY 10596

Notice also delivered by Certified Mail, Return Receipt Requested and First Class Mail to:

Legal Services of the Hudson Valley
90 Maple Avenue
White Plains, NY 10601

Westchester County Commissioner Social Services
Westchester County Department of Social Services
112 E. Post Road # 5
White Plains, NY 10601

STATE OF NEW YORK
TOWN OF CORTLANDT   JUSTICE COURT
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X

TOWN OF CORTLANDT,

                   Petitioner/Landlord,

Index No. _____

**VERIFIED
PETITION**

-against-

RIVEREDGE OWNERS ASSOCIATION,
Brian Porteus, Thomas Underwood, Thomas
Burkholder, Wayne Calley, Jose A.Vicente,
John Doe I, Elliot Rosenthal,Sylvia Pelaev,
Gonzalo Zhingri, Joan Juckett, Frank Sebok,
Debbie Juckett, Ted Oswald, Charity Oswald,
Mike Lane, Betty Lane, John Moynihan,
Richard Bonita, Margaret Anesi, Alice Crowe
Walter Perry, John Does IV, V and VI,

                Respondents/Tenants.
-----------------------------------------------------------------------X

I, Paul E. Svensson, am an attorney admitted to practice in the Courts of the State of New York, and say that: I am the attorney of record for the Petitioner, the Town of Cortlandt, County of Westchester, State of New York.

1.     Town of Cortlandt is a municipal corporation under the laws of the State of New New York. The interest of the Town of Cortlandt in bringing the instant Petition is as the Remainderman next entitled to the full and exclusive possession of the property, described more thoroughly in the Deed Retaining Life Estate, annexed hereto as **EXHIBIT A**, upon the termination of the Lease Agreement made by and between the Town of Cortlandt with the Riveredge Owners' Association, annexed hereto as **EXHIBIT B**. See RPAPL Section 721(2).

2.     James Martin deeded the subject property to The Town of Cortlandt on February 25, 1992, subject to a Life Estate, and further provision for a ten year continuance of a trailer park, after the death of Mr. Martin, with the understanding that upon the termination of these

conditions the ownership of the property would fully vest in the Town of Cortlandt to forever use for parkland and recreation. (See Exhibit A, ¶19).

3.    In compliance with the terms of the Deed, the Town of Cortland entered into a Lease Agreement with the Respondent, Riveredge Owners' Association, such that upon the death of James Martin or the earlier termination of his Life Estate in the subject premises, a ten year period for the lease of property as a residential trailer park ("property") would commence subject to certain terms and conditions. (See Exhibit B).

4.    The corporate status of the Riveredge Owners' Association is unknown. Upon information and belief, the Riveredge Owners' Association was never incorporated within the State of New York.

5.    Upon information and belief, the last known officer of Respondent, Riveredge Owners' Association, was Karen Rella and the Respondent, Riveredge Owners' Association, was operating from 41 Riverview Avenue, P.O. Box 310, Verplanck, NY 10596.

6.    Respondent, Riveredge Owners' Association had the right to sublet individual portions of the property for the use and occupancy of its members, successors and assigns, but only for a period not to exceed the term of this Agreement.  (See Exhibit B, ¶5 and ¶6).

7.    The Lease Agreement established a Landlord-Tenant relationship between the Town of Cortlandt and the Riveredge Owners' Association, but no special status was created therein between the Town of Cortlandt and the member, tenant(s) or subtenant(s) of the Riveredge Owners' Association. (See Exhibit B, ¶20).

8.    The Lease Agreement specifically acknowledged that the Town of Cortlandt was not a Mobile Home Operator. (See Exhibit B, ¶10).

9.      As set forth in the Certified Death Certificate issued by the Town of Greenwich, Connecticut, annexed hereto as **EXHIBIT C**, James Martin passed away on July 3, 2006.

10.      Thus, the Lease Agreement became effective on July 3, 2006 and the Lease Agreement terminated on July 3, 2016.

11.      Thus, under the Deed Retaining Life Estate and the Lease Agreement, it is respectfully submitted that the Town of Cortlandt became the Remainderman next entitled to possession of the property on July 3, 2016.

12.      As such, Respondent, Riveredge Owners' Association has no remaining interest in the subject property because the Lease Agreement has expired.

13.      As noted above, the Riveredge Owners' Association did not have authority to execute a lease or sublease with the members, successors and assigns beyond the expiration date of the Lease Agreement.

14.      As such, the Respondents who continue to reside in trailers and/or store personal goods in trailers have no remaining interest in the subject property because the Lease Agreement has expired.

15.      The individuals described herein do not pay taxes or rent to the Town of Cortlandt. They do not have a landlord – tenant relationship with the Town of Cortlandt.

16.      The interest of the remaining individuals either as owners, tenant(s), subtenant(s), or individuals storing goods in the trailers after the expiration of the lease is best described as a "squatter."

17.      The Town of Cortlandt Justice Court has jurisdiction over this matter pursuant to RPAPL Section 769 because the real property at issue is located within the Town of Cortlandt,

and the Lease Agreement established a landlord - tenant relationship between the Town of Cortlandt and the Riveredge Owners' Association. See RPAPL Section 721(1).

18.    The Town of Cortlandt provided notice to the Riveredge Owners' Association, and the owners, tenant(s) and subtenant(s) that the Lease Agreement would be ending in July 2016; that the trailer park must be vacated; and that an eviction would occur if the premises were not timely vacated. (See Affidavit of Chris Kehoe, annexed hereto as **EXHIBIT D**).

19.    Notices that the Lease Agreement with the Riveredge Owners' Association had reached its expiration and eviction was imminent if the property was not vacated were posted (see attached photograph), personally delivered to owner(s), tenant(s) and subtenant(s), left wedged in doors of the trailers, and mailed to the known addresses by certified mail.  (See Exhibit D).

20.    The Town of Cortlandt also offered a buyout program to the owner(s) of the trailers prior to this action to assist in the relocation in anticipation of Town's recovery of possession of the land. (See Exhibit D).

21.    Of the 45 trailers that once occupied the entire trailer park, upon information and belief there are less than 17 trailers which remain occupied by individuals with a few used solely for supply of goods. (See Exhibit D).

22.    A Notice to Quit, annexed hereto as **EXHIBIT E**, was served upon the Respondents between June 30 and July 2, 2016 and/or mailed by first class mail on July 5, 2016 providing ten (10) days notice of the intent to file the instant action for recovery of the property on July 18, 2016.

23.    As such, Respondents have been notified of termination of the Lease Agreement and the July 2016 deadline to vacate the property.

PAGE   185

NEW: (Lot 1) 54.5 - 2 - 49
(Lot 2) 54.5 - 2 - 48   LIBER 10234 PAGE 185

DEED RETAINING LIFE ESTATE

THIS INDENTURE made this 27th day of February 1992 between
JAMES M. W. MARTIN residing at 180 North Street, Greenwich,
Connecticut, party of the first part, and TOWN OF CORTLANDT, a
New York State Municipality, having offices at     Van Wyck
Street, Croton-on-Hudson, New York party of the second part.

WITNESSETH:  That the party of the first part as a gift and
donation to the party of the second part, hereby conveys and
grants to the party of the second part, for recreation and
parkland use.

All that certain plot, piece or parcel of land with the buildings
and improvements thereon erected, situate, lying and being in the
Town of Cortlandt, County of Westchester and State of New York
and being more particularly bound and described as follows:

BEGINNING at a point on the northeasterly shore line of the
Hudson River where the same is intersected by the southeasterly
line of property leased by Caropac Realty Corporation to
Tidewater Oil Company by instrument dated August 6, 1934 and
recorded September 7, 1934 in Liber 3397 cp 109;

Running thence from said point of beginning along said land so
leased North 48 degrees 10' East 155.03 feet to a parcel of land
now or formerly known as the "Battery;"

Running thence along said land now or formerly known as the
"Battery" South 41 degrees 50' East 50.48 feet to a corner;

Thence still along said "Battery" and along lands now or formerly
of Investors Equity Company, Inc. North 59 degrees 03' East
264.76 feet to the southerly side of First Street as shown on a
certain map entitled "Map of Verplanck, formerly known as
Verplanck Point, Westchester County, New York" made by Cyrus
Latham, Surveyor, June 30, 1836 and filed in the Westchester
County Clerk's Office, Division of Land Records on June 30, 1916
as Map Number 2136;

Running thence still along said lands now or formerly of
Investors Equity Company, Inc. North 48 degrees 10' East 30.00
feet to the center line of said First Street;

Thence along said center line of First Street North 41 degrees
50', West 50.00 feet to a corner;

Thence running along lands now or formerly of Investors Equity
Company, Inc. and along land now or formerly of the Estate of
Patrick King and through Blocks Nos. 3, 7, 11 and 15 and crossing
First, Second, Third and Fourth Streets as shown on said map,
North 48 degrees 10' East 910.0 feet to a point in the center
line of Block No. 15 as shown on said map;



RECEIVED
MAR 1 2 1992
ASSESSOR'S OFFICE
TOWN OF CORTLANDT

LIBER 10234 PAGE 187

DEED RETAINING LIFE ESTATE
Page Two


Thence South 41 degrees 50' East along the center line of said
Block 15 on said map, 50.0 feet to a point;

Thence North 48 degrees 10' East 100.0 feet to the southerly side
of Fifth Street as shown on said map;

Thence along said southerly side of Fifth Street South 41 degrees
50' East 450.0 feet to the northwesterly side of Westchester
Avenue as shown on said map;

Running thence along said northwesterly side of Westchester
Avenue North 48 degrees 10' East 30.0 feet to the center line of
Fifth Street;

Thence along said center line of Fifth Street and crossing
Westchester Avenue South 41 degrees 50' East 355.8 feet to lands
conveyed by Caropac Realty Corporation to one Frank Martin by
deed dated June 22, 1940 and recorded June 24, 1940 in Liber 3838
cp 488;

Running thence along said land so conveyed to Martin, South 48
degrees 10' West 615.17 feet to a point in Block 8 as shown on
the above mentioned map;

Running thence through said Block 8 on a course South 41 degrees
50' East 85.46 feet to the Hudson River;

Running thence along the shore line of the Hudson River the
following courses and distances:  South 56 degrees 43' West
150.98 feet, South 67 degrees 59' West 51.92 feet, North 84
degrees 46' West 145.27 feet, North 43 degrees 50' West 90.60
feet, North 77 degrees 08' West 176.34 feet, South 88 degrees 14'
West 44.37 feet, North 87 degrees 54' West 36.22 feet, South 75
degrees 54' West 114.77 feet, North 81 degrees 57' West 146.0
feet, North 72 degrees 03' West 162.32 feet, North 76 degrees 14'
West 154.91 feet, North 55 degrees 18' West 130.55 feet and North
67 degrees 48' West 10.68 feet to the point and place of
BEGINNING.

EXCEPTING therefrom all that parcel of land which was conveyed by
Clarence L. Bleakley, now deceased, and wife, to Elsie Reen, by
deed dated July 1, 1925 and recorded August 4, 1925 in Liber 2594
cp 63 as corrected by deed from Cara R. Stevens and others to
Thomas Reen and Elsie Reen, his wife, dated October 14, 1936 and
recorded October 23, 1936 in Liber 3547 cp 221 and in said last
mentioned deed more particularly bounded and described as
follows:

PAGE    189

LIBER 10234 PAGE 189

DEED RETAINING LIFE ESTATE
Page Three

BEGINNING at an iron driven in the ground marking the westerly
corner of the plot hereby described, which corner is distant one
hundred and eighty-eight and three one-hundredths feet
southeasterly from and measured on a line drawn at right angles
to the division line between the lands now or late of the
Investors Equity Company, Inc. on the northwest and the lands of
the Estate of Clarence L. Bleakley, deceased, on the southeast;
and drawn from a point in said division line which is 258.41 feet
measured North 48 degrees 10' East along said division line from
a stone monument set at the corner in said division line which is
500 feet measured along the center line of First Street, shown on
said map of Verplanck hereinbefore referred to from the
southeasterly side of Broadway also shown on said map;

Thence from said place of beginning, being said westerly corner
of said plot hereby described;

Running along said lands of the Estate of Clarence L. Bleakley,
deceased, the following courses and distances:  South 88 degrees
52' East 125 feet to a corner, Thence South 1 degree 8' West 100
feet to a corner, Thence North 88 degrees 52' West 125 feet to a
corner; Thence North 1 degree 8' East 100 feet to the point or
place of BEGINNING.

SUBJECT TO:  The party of the first part retaining a life estate
for and during his natural life, and to invest in the party of
the second part upon the expiration of the life of the party of
the first part and the party of the second part accepting such
conveyance for parkland and recreation use only.

TOGETHER with all right, title and interest, if any, of the party
of the first part of, in and to any streets and roads abutting
the above-described premises to the center lines thereof,
TOGETHER with the appurtenances and all the estate and rights of
the party of the first part in and to said premises, TO HAVE AND
TO HOLD the premises herein granted unto the party of the second
part, the distributees or successors and assigns of the party of
the second part forever.

AND the party of the first part, in compliance with Section 13 of
the Lien Law, covenants that the party of the first part will
receive the consideration for this conveyance and will hold the
right to receive such consideration as a trust fund to be applied
first for the purpose of paying the costs of the improvement and
will apply the same first to the payment of the cost of the
improvement before using any part of the total of the same for
any other purpose.

LIBER 10234 PAGE 191

DEED RETAINING LIFE ESTATE
Page Four

IN WITNESS WHEREOF, the party of the first part has duly
executed this deed the day and year first above written,

In presence of,

STATE OF NEW YORK, COUNTY OF WESTCHESTER

On the 25th    day of February 1992, before me personally came
JAMES M. W. Martin to me known to be the individual described in
and who executed the foregoing instrument, and acknowledged that
he executed the same.

JOSEPH M. DARBY
Notary Public State of New York
No. 60-0859935
Qualified in Westchester County
Commission Expires July 31, 19 ( )

JAMES M. W. MARTIN

JAMES M. W. MARTIN

to

TOWN OF CORTLANDT

RECORDED AT REQUEST OF
R G AGENCY
228 NORTH DIVISION STREET
BOX 431
PEEKSKILL, NY 10566
(914) 739-2700
RETURN BY MAIL TO

Record & Return to:

Thomas Wood, Esq.
153 Albany Post Road
Buchanan, NY 10511

Sec. 9.02A
B1 1
Lot 1,2,3
T)Cortland
R 3395

LIBER 10234 PAGE 193



W02692059



DED2                                                                                                      6



LIBER 10234 PAGE 183

WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
(THIS PAGE FORMS PART OF THE INSTRUMENT)

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

TYPE OF INSTRUMENT DED-DEED                       FEE PAGE   6   TOTAL PAGES   12
            (SEE CODES FOR DEFINITIONS)

| | | | |
|---|---|---|---|
| STAT'Y CHARGE | 5.25 | MORTGE. DATE | |
| REC'ING CHARGE | 18.00 | MORTGE. AMT | |
| RECMGT FUND | 4.75 | EXEMPT   YES   NO | |
| EA 5217 | 25.00 | | |
| TP-584 | 6.00 | REC'D TAX ON ABOVE MTGE: | |
| CROSS-REF. | 0.00 | BASIC       $ | |
| MISC. | | ADDITIONAL $ | |

LIBER: 10234
PAGE :   183

SUBTOTAL   $
TOTAL        SPECIAL    $
59.00        TOTAL      $

THE PROPERTY IS SITUATED
IN WESTCHESTER COUNTY,
NEW YORK IN THE:
TOWN OF CORTLANDT

SERIAL NO.

$        0.00
    CONSIDERATION

DWELLING     1-6     OVER

RECEIVED:
TAX AMOUNT $        0.00
TRANSFER TAX#   0008484

DUAL TOWN
DUAL COUNTY/STATE

HELD
NOT HELD

TITLE COMPANY NUMBER:

EXAMINED BY    EMN1

TERMINAL CTRL# 92059W026

DATE  RETURNED

0002508000 02/28/92CPA/DE    59.00
15:55

I HEREBY CERTIFY THAT THE ABOVE
INFORMATION FEES AND TAXES ARE
CORRECT
WITNESS MY HAND AND OFFICIAL SEAL

ANDREW J. SPANO
WESTCHESTER COUNTY CLERK

LIBER 10234 PAGE 184



DOCUMENTS, DEFINITIONS AND CODES

| AFF | AFFIDAVIT RECORDED IN THE MISCELLANEOUS BOOK |
| AGR | AGREEMENT RECORDED IN THE MISCELLANEOUS BOOK |
| ALR | ASSIGNMENT OF L & R RECORDED IN THE BOOK OF DEEDS |
| AOS | AFFIDAVIT OF SERVICE RECORDED IN THE BOOK OF DEEDS |
| ASS | ASSIGNMENT RECORDED IN THE BOOK OF MORTGAGES |
| CAG | CANCELLATION OF AGR. RECORDED IN THE MISCELLANEOUS BOOK |
| CEM | CEMETERY DEED RECORDED IN THE MISCELLANEOUS BOOK |
| CMT | COMMITMENT RECORDED IN THE MISCELLANEOUS BOOK |
| CNT | CONTRACT RECORDED IN THE BOOK OF DEEDS |
| CTF | CERTIFICATE RECORDED IN THE MISCELLANEOUS BOOK |
| DAG | DEED AGREEMENT RECORDED IN THE BOOK OF DEEDS |
| DCN | DEDICATION RECORDED IN THE BOOK OF DEEDS |
| DED | DEED RECORDED IN THE BOOK OF DEEDS |
| DLR | DECLARATION RECORDED IN THE BOOK OF DEEDS |
| EAS | EASEMENT RECORDED IN THE BOOK OF DEEDS |
| HMX | HOMESTEAD EXEMPTION RECORDED IN THE BOOK OF DEEDS |
| JDG | JUDGMENT RECORDED IN THE MISCELLANEOUS BOOK |
| LAG | LEASE AGREEMENT RECORDED IN THE BOOK OF DEEDS |
| LOP | LETTERS OF PATENT RECORDED IN THE BOOK OF DEEDS |
| MAG | MTG AGREEMENT RECORDED IN THE BOOK OF MORTGAGES |
| MTG | MORTGAGE RECORDED IN THE BOOK OF MORTGAGES |
| NOA | NOTICE OF APPROPRIATION RECORDED IN THE BOOK OF DEEDS |
| NPL | NEGATIVE PLEDGE RECORDED IN THE MISCELLANEOUS BOOK |
| ODR | ORDER RECORDED IN THE MISCELLANEOUS BOOK |
| PAT | POWER OF ATTORNEY RECORDED IN THE MISCELLANEOUS BOOK |
| RAG | REGISTERED AGREEMENT RECORDED IN THE BOOK OF MORTGAGES |
| RLS | RELEASE RECORDED IN THE BOOK OF DEEDS |
| ROT | RLS OF ESTATE TAX RECORDED IN THE BOOK OF DEEDS |
| RPA | REVOCATION OF PAT RECORDED IN THE MISCELLANEOUS BOOK |
| SDE | SUNDRY DEED RECORDED IN THE BOOK OF DEEDS |
| SFD | SHERIFF'S DEED RECORDED IN THE BOOK OF DEEDS |
| SIR | STMT ID OF REAL PROP RECORDED IN THE BOOK OF DEEDS |
| SMT | SUNDRY MTG RECORDED IN THE BOOK OF MORTGAGES |
| STM | SATISFACTION MTG |
| TOR | TORRENS DEED |
| WAV | WAIVER RECORDED IN THE MISCELLANEOUS BOOK |
| WLL | WILL RECORDED IN THE MISCELLANEOUS BOOK |

## LEASE AGREEMENT

THIS AGREEMENT made by and between THE TOWN OF CORTLANDT, a Municipal Corporation having its principal place of business at 1 Heady Street, Cortlandt Manor, New York, (hereinafter referred to as the "TOWN\LANDLORD"), and THE RIVEREDGE OWNERS' ASSOCIATION having its principal place of business on Riverview Rod, Verplanck, New York, (hereinafter referred to as "ASSOCIATION\TENANT"), and

WHEREAS, the TOWN has become the owner in Fee Simple of 26 acres of riverfront property formerly owned by James Martin, and

WHEREAS, the gift of property to the TOWN was subject to a Life Estate in favor of James Martin for his continued operation of a Trailer Park, and

WHEREAS, the TOWN and the ASSOCIATION are desirous of entering into an Agreement to reflect their rights and interests following the death of James Martin, or the earlier termination of his life estate in the area utilized by the ASSOCIATION, and

WHEREAS, it is the desire of both the TOWN and the ASSOCIATION to set forth these rights,

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1. **Term:** The parties acknowledge that this Agreement shall be immediately binding upon them, but none of the terms and conditions herein shall become effective until the death of James Martin, or the earlier termination of his Life Estate in the subject premises. Upon the happening of either the death of James Martin, or the earlier termination of his Life Estate, this Agreement shall be effective for a period of ten (10) years from the date thereof.

2. **Property:** This Agreement shall effect that area used by the ASSOCIATION for the use and occupancy of the ASSOCIATION's members for their principal residences which said area is specifically described in Schedule A annexed hereto and made a part hereof.

3. **Exclusive Use:** The parties agree that the TENANTs shall have the exclusive use and possession of the above described property and shall be allowed to utilize the same for the use of its members' use and occupancy of their Mobile Homes on said site.

4. **Zoning:** The TOWN does hereby represent and acknowledge that the present use of the subject premises is for a Mobile Home Park and that the TOWN acknowledges that said use is a pre-existing non-conforming use which may be continued, but which may not be expanded or enlarged. It is specifically agreed and understood that none of the present units on the premises may be enlarged, or expanded in any manner. The parties acknowledge that the site is presently used and occupied by 45 Trailers.

5. **Right to Sublet:** The parties specifically acknowledge that the TOWN is leasing to the ASSOCIATION the land upon which the ASSOCIATION operates its Trailer Park. The parties specifically agree that the TENANT has the right to sublet said property for the use and occupancy of its members and their successors and/or assigns for the period not to exceed the term of this agreement.

6. **Notice of Sublease:** The TENANT hereby agrees to give to the TOWN within thirty (30) days following the effective date of

2

the term of this Agreement, a complete list of all of the subtenants of the ASSOCIATION and agrees to update said list upon the request of the TOWN and to notify the TOWN of any changes with respect to these names and addresses of any subtenants. The parties specifically acknowledge that the TENANT shall have the right to sublet to any person for the use and occupancy of the Mobile Homes on said site. However, none of the said subleases shall extend beyond the term of this Agreement. The TENANT agrees to provide to the TOWN written acknowledgement by the subtenant of the existence of this Lease Agreement with specific acknowledgement of the expiration contained herein.

7. **Real Estate Taxes:** The parties acknowledge that the Tenants will not have to pay any real estate taxes with respect to their use of the property.

8. **Town Code Violations:** The TOWN represents and warrants to the TENANT that as of the date of this agreement the TOWN knows of no violations of any Town, Zoning Law, or any other Town Ordinance, including, but not limited to the New York State building & Fire Prevention Code, other than those which have been set forth in Schedule B contained herein. The TENANT agrees to keep the property free of any violations of the New York State Fire Prevention Code and any other Ordinances, Rules or Regulations of the TOWN during the term of this Agreement, and shall not allow any of their subtenants to create any violations or allow any violations to exist on any subtenants' leasehold.

<u>3</u>

9.   Health Department Regulations:   The TENANT acknowledges that the TENANT has had full disclosure by the Westchester County Department of Health as to the present status of all of the Health Department Permits and violations with respect to the subject premises and agrees to accept the premises in an "AS IS" condition subject to the rules and regulations of the Department of Health and any violations that are presently outstanding, if any. The ASSOCIATION acknowledges that the TOWN will have no responsibility with respect to compliance with any rule, order or regulation of the Department of Health and that the TOWN is not obligated to take any steps to keep the property in compliance, and that the TENANT will be solely responsible to keep the property in full compliance with all Department of Health Rules and Regulations.

10.   Mobile Home Operator:   The parties hereby specifically acknowledge that the TOWN is not a Mobile Home Operator. That the TOWN is leasing the entire subject premises to the TENANT, and that the TENANT be deemed to be a Mobile Home Operator as defined by the provisions of the Real Property Law of the State of New York, and the TENANT agrees to comply with all of the provisions of said law and any rules and regulations promulgated thereunder by the State of New York.

11.   Liability:   The TENANT agrees to indemnify and hold the TOWN harmless from any and all liability arising out of the TENANT's use and occupancy of the subject premises.   The TENANT agrees to provide the TOWN with a Certificate of Liability Insurance naming the TOWN as an additional insured. Said policy

4

shall specifically provide that the carrier shall be responsible for the defense of any liability claims arising out of the TENANT'S use and occupancy of the subject premises.

12. Enforcement: The Association hereby agrees to enforce all of the terms and conditions of this Lease Agreement and shall preserve all of the terms and conditions of this Lease Agreement in any sublease granted on the subject premises. The Association grants unto the TOWN the right to enforce any sublease that may be entered into by the Association. Should the Association fail to properly enforce same within fifteen (15) days following notice by the TOWN of a violation of any sublease or any term or condition of this Agreement.

13. Town's Limited Responsibility: The parties hereby acknowledge that the TOWN is prohibited from spending any public funds in the furtherance of any of the terms and conditions of this Agreement. The parties acknowledge the provisions of Article 8 of the Constitution of the State of New York specifically prohibit the TOWN from expending any public funds for any private purpose. Thus, if the TENANT is unable to keep the property in compliance with any rules and regulations of the New York State Department of Health or the New York State Building or Fire Prevention Code, then the TOWN will have no liability and no responsibility to make any improvements or repairs to the subject premises due to the provisions of the State Constitution.

14. Notices: That any notices to be served upon the TOWN shall be delivered to the Town Clerk by certified mail, return

5

receipt requested, or by personal delivery thereof, upon the Town Clerk of the Town of Cortlandt at the Municipal Building, 111 Oregon Road, Cortlandt Manor, New York 10566. Any notices to the TENANT shall be delivered to

Each party agrees to advise the other in writing within thirty (30) days following the change of any address or name of any party to whom official notices should be delivered.

15. **Risk of Loss:** Upon the effective date of this agreement, the risk of loss of any property on the subject premises shall be the responsibility of the TENANT. The TENANT shall have full and sole obligation for insuring the same against loss and the LANDLORD shall bear no responsibility for any loss occasioned by fire or any other force.

16. **Condition of Premises:** In addition to compliance with all of the other terms and conditions herein, the TENANT agrees to keep the property clean and to properly maintain the same by the mowing of lawns and the designation of a specific area for the refuse collection bins for the use of the premises. The TOWN agrees to collect refuse from the subject premises as long as the same is in compliance with the rules and regulations of the TOWN then in effect. The TOWN agrees to plow the roadway through the subject premises in times of snow and to fill any potholes that might exist in said road as determined appropriate by the Superintendent of Highways. This action is being taken for the health, welfare and safety of the residents of said park.

6

17.    Quiet Enjoyment: The parties hereby acknowledge the right of the TENANTS' peaceful and quiet enjoyment of their Leasehold. The TOWN agrees to respect the quiet use and enjoyment of the TENANT with respect to the TOWN's utilization of any properties adjacent hereto. The TOWN specifically acknowledges that the adjacent properties shall be used by the TOWN for park purposes and that said use shall be consistent with the TOWN's use of other like properties owned by the TOWN throughout its boundaries.

18.    Default and Termination:    Should the TENANT become in default of any of the terms and conditions of this Agreement, the TOWN shall give to the TENANT thirty (30) days written notice of said TENANT's default. If the TENANT fails to commence steps to cure the default in the subject Lease, the TOWN shall, thirty (30) days written receipt of notice by the TENANT, have the right to declare the TENANT  in default and terminate the terms and conditions of this Lease.

19.    Termination:    Upon the expiration of the term of this Lease, or upon the abandonment of the premises by the TENANT, any and all property on the subject premises not taken by the TENANT or removed by the TENANT from the premises by the date of expiration of this Lease, shall be deemed to be abandoned property and ownership of which shall be revert to the Town of Cortlandt. The TENANT agrees that this provision shall be contained in all of the subleases entered into by the TENANT with any subtenants thereon. Any properties abandoned on the premises at the expiration of this

7

Lease may be removed by the TOWN and destroyed, sold, or otherwise disposed of without any other further liability to the TENANT or the owner thereof.

20. **Enforcement:** The parties specifically agree and acknowledge that this Agreement creates a LANDLORD-TENANT relationship and that any disputes determining the same may be addressed under the provisions of the Real Property Actions and Proceedings Law as those provisions relate to Landlords and Tenants, and that no special status is created herein between the TOWN and the TENANT or any subtenants as herein set forth.

29. **Miscellaneous:** It is hereby agreed between the parties that should any of the Trailers whose owners or members of the River Edge Association need to be moved, to be within the leaed area, that the Town of Cortlandt agrees to bear the cost and expense of the moving of said Trailer into the leased area.

**IN WITNESS WHEREOF,** the parties hereunto set their hands and seal the date above written.

3/2/95

THE TOWN OF CORTLANDT

BY: _____
/SUPERVISOR

RIVEREDGE OWNERS' ASSOCIATION

BY: _____

8



VS 4 REV 1/04
STATE OF CONNECTICUT
DEPARTMENT OF PUBLIC HEALTH

CERTIFICATE OF DEATH

STATE FILE NUMBER (For State Use only Do not write in this box)

**339**

| 1 DECEDENT'S LEGAL NAME (Include AKA s if any) (First Middle Last) | | 2 SEX ☒ Male ☐ Female | 3 ACTUAL OR PRESUMED DATE OF DEATH (MM/DD/YYYY) (Spell Month) 07/03/06 | 4 ACTUAL OR PRESUMED TIME OF DEATH 8:00 ☐ AM ☒ PM |
|---|---|---|---|---|
| JAMES    MARTIN | | | | |

| 5 AGE LAST BIRTHDAY | 6 UNDER 1 YEAR Mo Days | UNDER 1 DAY Hours Min | 7 DATE OF BIRTH (MM/DD/YYYY) | 8 BIRTHPLACE (City State or Foreign Country) |
|---|---|---|---|---|
| 87 | | | 09/07/1918 | East Preston, Worthington, England |

| 9 RESIDENCE (State) | 10 RESIDENCE (County) | 11 RESIDENCE (City or Town) | 12 RESIDENCE (Street and No) | 13 APT NO |
|---|---|---|---|---|
| Connecticut | Fairfield | Greenwich | 180 North Street | |

| 14 ZIP CODE | 15 EVER IN US ARMED FORCES? ☒ Yes ☐ No | 16 MARITAL STATUS AT TIME OF DEATH ☐ Married ☐ Married but separated ☒ Widowed ☐ Divorced ☐ Never Married ☐ Unknown | 17 SURVIVING SPOUSE S NAME (If wife give full name prior to first marriage) |
|---|---|---|---|
| 06830 | | | |

| 18 FATHER S NAME (First Middle Last) | 19 MOTHER S NAME PRIOR TO FIRST MARRIAGE (First Middle Last) |
|---|---|
| Leonard  James  Martin | Emilia  Allison |

| 20 INFORMANT S NAME | 21 INFORMANT S RELATIONSHIP TO DECEDENT | 22 MAILING ADDRESS (Street and Number City State Zip Code) |
|---|---|---|
| Patricia  van Heel | Niece | 938 Boston Post Rd  Madison, CT 06443 |

| 23 IF DEATH OCCURRED IN A HOSPITAL ☐ Inpatient ☐ ER/outpatient ☐ Dead on Arrival | 24 IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL ☐ Hospice Facility ☐ Nursing Home ☒ Decedent s Home ☐ Other (specify) | 25 FACILITY NAME (If not institution give street & number) 180 North Street |
|---|---|---|

| 26 CITY OR TOWN OF DEATH | ZIP CODE | 27 COUNTY OF DEATH | 28 METHOD OF DISPOSITION ☐ Burial ☒ Cremation ☐ Donation ☐ Entombment ☐ Removal from State ☐ Other (specify) |
|---|---|---|---|
| Greenwich | 06830 | Fairfield | |

| 29 DISPOSITION (Name of cemetery crematory other place) | 30 LOCATION (city/town state) | 31 DATE (MM/DD/YYYY) | 32 WAS BODY EMBALMED? ☐ Yes ☒ No If yes Name of Embalmer |
|---|---|---|---|
| Ferncliff Crematory | Hartsdale, New York | 07/06/2006 | |

| 33 FUNERAL FACILITY  Name and Address (street town state zip) FRED D  KNAPP & SON FUNERAL HOME 267 Greenwich Ave  Greenwich, CT 06830 | 34 SIGNATURE OF FUNERAL DIRECTOR OR EMBALMER | 35 LICENSE NUMBER OF SIGNEE IN BOX 34 2302 |
|---|---|---|

| 36 DATE PRONOUNCED DEAD (MM/DD/YYYY) 07/03/06 | 37 TIME PRONOUNCED 8:00 PM | 38 NURSE PRONOUNCEMENT NAME AND DEGREE OR TITLE (Print) NANCY PRINCE RN | 39 SIGNATURE Nancy Prince | 40 DATE SIGNED 07/03/06 |
|---|---|---|---|---|

| 41 WAS MEDICAL EXAMINER CONTACTED? ☐ Yes ☒ No 06-08428 | 42 WAS AN AUTOPSY PERFORMED? ☐ Yes ☒ No | 43 WERE THE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☐ Yes ☒ No |
|---|---|---|

CAUSE OF DEATH

| 44 PART I Enter the chain of events diseases injuries or complications that directly caused the death DO NOT enter terminal events such as cardiac arrest respiratory arrest or ventricular fibrillation without showing the etiology DO NOT ABBREVIATE Enter only one cause on a line Add additional lines if necessary | | APPROXIMATE INTERVAL ONSET TO DEATH |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | (a) Cardiac Arrest Due to (or as a consequence of) | Immediate |
| Sequentially list conditions if any leading to the cause listed on line (a) Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | (b) Metastatic Carcinoma Due to (or as a consequence of) | months |
| | (c) Due to (or as a consequence of) | |
| | (d) | |

| 45 PART II Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I Atrial Fibrillation, CHF | 46 IF FEMALE ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant but pregnant within 42 days of death ☐ Not pregnant but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within the past year | 47 DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ Probably ☒ No ☐ Unknown |
|---|---|---|

| 48 CERTIFIER (Check only one) ☒ Certifying physician I am the attending physician and/or a physician acting on behalf of the attending physician and to the best of my knowledge death occurred due to the cause(s) and manner stated ☐ Pronouncing & Certifying physician I am the attending physician and/or a physician acting on behalf of the attending physician to the best of my knowledge death occurred at the time date and place and due to the cause(s) stated | | | | |
|---|---|---|---|---|
| Certifier Name (type or print) Francis X. Walsh MD | Certifier Signature X Walsh | Title of Certifier MD | State CT | Date Certified 7/5/06 |

| 49 MAILING CERTIFIER 31 River Rd  Cos Cob  CT  06807 | | (Street) (City or Town) |
|---|---|---|

| THIS CERTIFICATE WAS RECEIVED FOR RECORD ON JUL 05 2006 | BY | REGISTRAR Barbara Lowden Ct. |
|---|---|---|

| 50 DECEDENT S EDUCATION Check the box that best describes | 51 DECEDENT OF HISPANIC ORIGIN? | 52 DECEDENT S RACE |
|---|---|---|

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY OF THE RECORD ON FILE IN THE GREENWICH TOWN CLERK'S OFFICE, EXCEPT SUCH INFORMATION THAT IS NONDISCLOSABLE BY LAW, ATTESTED BY THE RAISED SEAL OF THE TOWN OF GREENWICH.

ASSISTANT REGISTRAR   JUNE 15, 2016

LEGAL FEE: $20.00
THIS CERTIFICATE NOT VALID WITHOUT SEAL

4.      The Town of Cortlandt provided notice to the Riveredge Owners' Association, and the owners, tenant(s) and subtenant(s) that the Lease Agreement would be ending in July 2016; that the trailer park must be vacated; and that an eviction would occur if the premises were not timely vacated. (See Affidavit of Chris Kehoe, annexed hereto as **EXHIBIT D**).

5.      Notices that the Lease Agreement with the Riveredge Owners' Association had reached its expiration and eviction was imminent if the property was not vacated were posted (see attached photograph), personally delivered to owner(s), tenant(s) and subtenant(s), left wedged in doors of the trailers, and mailed to the known addresses by certified mail.

6.      The Town of Cortlandt offered a buyout program to the owner(s) of the trailers to assist in the relocation in anticipation of Town's recovery of possession of the land.

7.      Of the 45 trailers that once occupied the entire trailer park, upon information and belief there are less than 17 trailers which remain occupied by individuals with a few used solely for supply of goods.

_____
CHRIS KEHOE

Sworn to before me
this 30 day of June, 2016.

_____
NOTARY PUBLIC

JUDITH A. HERMESCH
Notary Public, State of New York
No. 01HE5065124
Qualified in Westchester County
Commission Expires 7-3-2017